# Exhibit B

| STATE OF INDIANA | SS: | IN THE MARION SUPERIOR COURT |
|---|---|---|
| COUNTY OF MARION | | CAUSE NO. |

RICKY HURST,
    *Plaintiff*

vs

DICKINSON FLEET SERVICES, LLC
    *Defendant*

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, Ricky Hurst, Plaintiff, by counsel, Rachelle N. Ponist, and respectfully submits this Complaint for Damages. In support thereof Plaintiff states as follows:

### The Parties, Jurisdiction, and Preferred Venue

1. Plaintiff Ricky Hurst ("Mr. Hurst") is an individual residing at 4829 North Katherine Drive, Indianapolis, Marion County, Indiana 46226.

2. Defendant Dickinson Fleet Services, LLC ("Dickinson") is a limited liability company doing business in Marion County located at 4709 West 96th Street, Indianapolis, IN 46268.

3. Dickinson specializes in trucking fleet maintenance services.

4. Marion County is a county of preferred venue under Ind. Trial Rule 75(A) because Dickinson is located in Marion County, Indiana and was Mr. Hurst's place of employment.

1

## General Factual Allegations

5. At all relevant times herein, Dickinson is a national chain of fleet service facilities offering various fleet maintenance, repair, and related services with a location at 4709 West 96th Street, Indianapolis, Indiana 46268.

6. Dickinson employed Mr. Hurst for over 26 years until his abrupt termination on March 5, 2020.

7. Mr. Hurst was 64 years of age at the time of his termination.

8. On September 25, 2019, Mr. Hurst suffered a stroke requiring hospitalization.

9. Dickinson expected Mr. Hurst to return to work on or about October 7, 2019, approximately 10 days after his hospitalization.

10. At the time, Mr. Hurst was employed as a supervisor.

11. Mr. Hurst could not handle the stress of continuing his duties as supervisor upon his return to work as he was still recovering from the stroke, but he was still on the floor.

12. Dickinson's human resources department met with Mr. Hurst repeatedly to inquire about his ongoing health status.

13. Dickinson's human resources department never mentioned any issues with Mr. Hurst's performance.

14. Prior to his stroke, Mr. Hurst had regular one-on-one meetings with the general manager, Richard Schlatter ("Mr. Schlatter"), where they discussed performance and other job-related matters and Mr. Hurst never received any complaints.

15. After his stroke, Mr. Hurst met with Mr. Schlatter one time prior to his termination and no performance issues were mentioned.

16. On March 5, 2020, Mr. Hurst was terminated and Dickinson told him it was part of a layoff and because of his performance issues.

17. At the time of his termination, Mr. Hurst was informed he was part of a lay-off, but Dickinson was actively hiring younger, new employees at a lower pay rate than what Mr. Hurst was earning in the same position.

18. Had Mr. Hurst been aware that Dickinson had issues with his performance, he would have requested accommodations due to the issues he had from his stroke.

19. Mr. Hurst had a planned retirement date of March 7, 2021, almost one year to the day of his termination, that many of his coworkers were well aware of.

20. Mr. Hurst always met and exceeded all of his goals and objectives as a supervisor for over 26 years.

21. No performance issues were ever communicated to Mr. Hurst nor were any accommodations made for his disability resulting from the stroke.

22. Mr. Hurst was replaced by a younger employee who was being paid substantially less than what Mr. Hurst was being paid.

23. After Mr. Hurst's termination, he filed a complaint with the EEOC on September 1, 2020.

24. The EEOC issued the right-to-sue letter on December 7, 2020.

25. Mr. Hurst and Defendant agreed to toll the 90 day deadline after the dismissal in order to try to resolve the matter.

26. The parties have been unable to resolve the matter.

27. No agreement was reached to toll the 2 year tort statute of limitation.

### Count I. Age Discrimination

28. Paragraphs 1 through 27 are incorporated into this Count as if set forth fully herein.

29. Under the Federal Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. Section 621 et. seq. (ADEA), employers are forbidden from discriminating against people who are 40 years or older in the hiring, firing, pay, job assignments, promotions, layoffs, training, benefits, and any other term or condition of employment.

30. On March 5, 2020, Mr. Hurst was 64 years of age.

31. On March 5, 2020, Mr. Hurst was terminated by Dickinson.

32. Dickinson has more than 20 employees and is thus subject to ADEA claims.

33. Mr. Hurst was qualified to continue in his position with Dickinson at the time of his termination.

34. Mr. Hurst was replaced by someone younger in his position at Dickinson.

35. Dickinson's termination of Mr. Hurst for his age was willful.

36. Thus, Dickinson committed age discrimination against Mr. Hurst in his termination.

37. Under the ADEA, Dickinson is responsible for damages resulting from the unlawful termination of Mr. Hurst.

38. Dickinson's termination of Mr. Hurst caused Mr. Hurst to suffer damages including but not limited to lost wages, lost employment benefits, embarrassment, humiliation, emotional and mental distress, and attorney fees as a direct and proximate result of Dickinson's violation of his civil rights as alleged herein.

**WHEREFORE**, Plaintiff, Ricky Hurst, respectfully requests this Court to enter judgment in his favor against Dickinson for his actual damages, compensatory damages, liquidated damages, reasonable attorneys fees and costs, pre-judgment and post-judgment interest, and for all other relief just and proper in the premises.

### Count II. Disability Discrimination

39. Paragraphs 1 through 38 are incorporated into this Count as if set forth fully herein.

40. Under the Title 1 of the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101, et. seq. (ADA), employers are forbidden from discriminating against qualified individuals with disabilities in hiring, firing, advancement, compensation, job training, and other terms, conditions and privileges of employment.

41. All employers who employee more than 15 employees are covered under the ADA.

42. Dickinson employs more than 15 employees and is thus subject to the terms of the ADA.

43. Mr. Hurst was an employee who, with or without reasonable accommodation, could perform the essential functions of his job.

44. Dickinson committed disability discrimination against Mr. Hurst, through its agents and employees, by terminating him because of his actual or perceived disabilities and/or record of impairment, and failing to provide reasonable accommodations for his known disability, which constitutes violations of the ADA.

45. As a direct result of the aforementioned unlawful discriminatory employment practices against Mr. Hurst in violation of the ADA, Mr. Hurst has sustained damages including loss of earnings, loss of benefits, back pay, and front pay, plus any interest due thereon.

46. Additionally, as a result of the aforesaid discriminatory practices, Mr. Hurst has suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

**WHEREFORE**, Plaintiff, Ricky Hurst, respectfully requests this Court to enter judgment in his favor against Dickinson for his actual damages, compensatory damages, liquidated damages, reasonable attorneys fees and costs, pre-judgment and post-judgment interest, and for all other relief just and proper in the premises.

## Jury Demand

Pursuant to Ind. Trial Rule 38, hereby demands a trial by jury in this action.

    Respectfully submitted,

_____
Rachelle N. Ponist, Atty. Number 31464-32
Email        rponist@handponist.com

Hand Ponist Smith & Rayl, LLC
1512 N. Delaware St.
Indianapolis, IN  46202
Phone 317-964-6000
Fax    317-927-8074
Attorney for Ricky Hurst

7